UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| MIAE DECOVICH,<br><br>　　　　　　　Plaintiff(s),<br><br>　v.<br><br>VENETIAN CASINO RESORT, LLC, et al.,<br><br>　　　　　　　Defendant(s). | Case No. 2:11-CV-872 JCM (CWH)<br><br>ORDER |

The court presently considers the administrator's record in case no. 2:11-cv-00872-JCM-CWH and its application to the parties' respective motions for judgment on the pleadings and administrative record (ECF Nos. 25, 26), in accordance with the Ninth Circuit's memorandum. (ECF No. 42) ("Thus, on remand, review should be on the record that was before the administrator.").

**I.    Background**

On May 31, 2011, plaintiff filed a complaint in this court, alleging that defendant had wrongfully denied her long-term disability ("LTD") benefits in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B).  Plaintiff stopped working as a dealer at the Venetian Casino Resort on September 28, 2009, because, she asserts, her fibromyalgia had become disabling.  Anthem-000013, 399; *see also* Anthem-000012.[1]  She later filed a claim for long-term disability benefits on January 18, 2010.  Anthem-000402–06. Custom Disability Solutions ("CDS") is the claims advisory agent for defendant Anthem Life

---

[1] Previously, plaintiff had worked 40 hours a week, eight hours a day.  Anthem-000527.

**James C. Mahan**
**U.S. District Judge**

Insurance Company ("Anthem"), which is the long term disability insurance carrier for the Venetian Casino Resort Group LTD policy.[2]  *Id.* at 13, 160.

On February 26, 2010, plaintiff submitted to a "telephonic interview for long term disability claims."[3]  *Id.* at 519.  The records of the call indicate that plaintiff stated that she had been diagnosed with fibromyalgia, mostly impacting her lower back, and some stomach pain, which prevent her from working.  *Id.* at 520.  Plaintiff additionally indicated how:

> She has headaches, hands, knees, shoulders are sore.  She is unable to lift anything and loses her balance.  It is sometimes to [sic] open her left eye due to muscle weakness.  She also noted she has problems with memory loss.  She lays down a lot.

*Id.*  She further indicated that she had been treated by Dr. Jianu, a rheumatologist.  *See id.* at 49, 521.  Plaintiff also stated on that call that she cannot do laundry, cook, or do housework; her roommate is responsible for taking plaintiff to doctor appointments.  *Id.* at 522.  When asked about her exercise, the record indicates that plaintiff "d[id] some stretching."  *Id.* at 523.

A May 14, 2010, letter from CDS informed plaintiff that her LTD claim had been denied.  *Id.* at 160.  The letter indicates that CDS's decision was based on: (1) the medical records from September 28, 2009, to that date from Drs. Tudor Jianu, Edward Tsai, Robert Yeh, Gregory Baker, and Michael Milligan; (2) Dr. Paul Howard's peer review; and (3) Dr. Tsai's response to that peer review.[4]  *Id.* at 161.

The letter indicates CDS's cognizance of Dr. Tsai's report that plaintiff also suffered from stomach pains, had trouble standing for prolonged periods, and plaintiff reported an intention to consult with specialists.  *Id.*; *see also* Anthem-000167.  However, the letter indicates that Dr. Tsai "did not provide any restrictions or limitations."  Anthem-000161.

Ultimately, the letter concluded that:
> [A]lthough [plaintiff] ha[s] self-reports of pain and have been diagnosed with fibromyalgia, the medical evidence does not provide objective data that [her] condition raises to the level of functional impairment, which would preclude [plaintiff] from performing [her] own occupation as a Dealer.  Therefore, we are

---

[2] Anthem is defendant in its capacity as the claims administrator of the Venetian Insurance Package Long-Term Disability Plan.  (ECF No. 1).

[3] It is possible that plaintiff may have difficulty with the English language and may have used her roommate to help communicate.  *See* Anthem-000529.

[4] Dr. Howard is a member of CDS's clinical staff and a board-certified rheumatologist.  Anthem-000161.

**James C. Mahan**
**U.S. District Judge**

- 2 -

>   unable to extend benefits to [plaintiff], as [she] did not meet the definition of disability throughout the elimination period and ongoing as defined by the policy.

*Id.*

Although CDS's letter states that Dr. Tsai did not include "restrictions or limitations," and Dr. Tsai's response to CDS question reflecting that language is blank, he did indicate the stomach issues and difficulty standing in response to the question "What are the current precluding factors that prevent Ms. Decovich from returning to work in her own occupation as a Casino Dealer based on her new diagnosis of fibromyalgia at this date?" *Id.* at 161, 67. Dr. Tsai ultimately concluded that "the anticipated return to work date for Ms. Decovich" or "estimated length of duration for recovery" is "unknown." *Id.* at 168.

A January 19, 2010, physician's statement indicates that Dr. Tsai, who operates a "family practice," diagnosed plaintiff with fibromyalgia and abdominal pain.[5] *Id.* at 406. Dr. Tsai claimed that Decovich could not stand, sit or walk for more than 15 minutes at a time, among other limitations. *Id.* at 31. Dr. Barry Gendron, reviewing referred files on behalf of CDS, noted that Dr. Tsai's file does not support these restrictions and limitations. *Id.* at 406. Dr. Tsai also indicated that Decovich had these restrictions and limitations since 2008, even though Decovich worked until September 2009. *Id.* at 31–32. Dr. Gendron found these restrictions and limitations unsupported for this additional reason as Decovich continued to work during the time that she purportedly could not sit, stand, or walk more than 15 minutes at a time. *Id.* at 41–42. Dr. Gendron also noted that Dr. Tsai deferred his opinion to Decovich's treating specialist. *Id.* at 22–23; *see also* Anthem-000138–44.

Dr. Howard's peer review was transmitted on April 22, 2010. Anthem-000169. He concluded that plaintiff had fibromyalgia "based on widespread pain" and noted that Dr. Baker's evaluation did not describe the location of plaintiff's "tender points." *Id.* at 172. He further determined that "[plaintiff] has no evidence of any loss of muscle tone, loss of range of motion in any peripheral joints, or in cervical, thoracic or lumbar spine." *Id.* at 173. Dr. Howard continues, stating: "She has no evidence of any abnormalities in station and gait or any focal neurologic abnormalities. There is no evidence of muscular atrophy." *Id.* Excluding a finding of allodynia, Dr. Howard concluded that "there is no objective foundation for functional impairment.

---

[5] This form was apparently submitted as part of plaintiff's claim for long-term disability benefits. Anthem-000402.

James C. Mahan
U.S. District Judge

- 3 -

[Plaintiff's] functional impairment is self-reported and is not supported by the physical examination findings." *Id.*

Additionally, Dr. Howard considered that plaintiff may have irritable bowel syndrome, gastritis "that is partially controlled with acid suppression therapy," chronic opioid dependency, and depression. *Id.* He found that the first, second, and fourth maladies either did not indicate functional impairment or there was a lack of evidence indicating functional impairment. *Id.* Dr. Howard additionally asserted that he is unable to determine whether the depression resulted in functional impairment. *Id.* In sum, Dr. Howard reported that "there are no physical restrictions or limitations as it relates to sitting, standing, walking, lifting, carrying, pushing, pulling, reaching or with repetitive and fine motor hand activities" and that "[t]he claimant can return to any occupation based on the absence of functional impairment from an objective view of the medical records." *Id.* at 173–74.

Plaintiff's letter of appeal was received by CDS on July 8, 2010. *Id.* at 14. To assess plaintiff's appeal, CDS requested medical documentation from Dr. Baker, Dr. Tsai, Dr. Yeh, Dr. Jianu, and Dr. Milligan. *Id.* at 15. Additionally, CDS solicited Dr. Gendron's opinion. *Id.*

Dr. Baker, a neurologist, found that an "MRI of the C-spine, L-spine, and EMG/nerve conduction studies of the lower and upper extremities were all within normal levels and Rheumatology also agreed this was fibromyalgia." *Id.* at 98. Dr. Jianu wrote that "[he] would incline to believe . . . that [plaintiff's] physical complaints are related to her severe depression" and that "[t]he musculoskeletal manifestations [from severe depression] are impairing her ability to perform her regular job." *Id.* at 49. Dr. Yeh, who saw plaintiff for abdominal pain, vomiting, and general pain, appears to have indicated to CDS that those ailments were not "vocationally impairing." *Id.* at 430.

Dr. Milligan's records revealed findings including tendinitis/bursitis in the right knee (for which Decovich received an injection), disc bulges in Decovich's back based on MRI images (for which Dr. Milligan referred her to physical therapy), and ulnar wrist pain. *See id.* at 222–38. It appears that plaintiff did not attend the physical therapy that Dr. Milligan recommended. *Id.* at 234–35. Ultimately, Drs. Baker, Jianu, and Milligan did not indicate that the defendant is physically disabled. *See id.* at 49, 94–95, 113.

On October 7, 2010, CDS sent a letter to plaintiff that informed plaintiff of the denial to reconsider her LTD benefits claim, explaining the reasoning behind that decision: *inter alia*, CDS

**James C. Mahan**
**U.S. District Judge**

- 4 -

referred to Dr. Howard's assessment that, although plaintiff's symptoms fit the criteria for fibromyalgia and allodynia, he did not believe there was "objective foundation for functional impairment." *Id.* at 13–14.

Dr. Gendron's letter to Dr. Tsai heavily involves a conclusion regarding plaintiff's psychiatric state, so this court will not consider the contents of that letter except for Gendron's statement that "I understand that Mi[a]e Decovich is a card dealer who has a history of generalized pain, a history of opioid dependence, fibromyalgia syndrome, neck and low back pain with normal, age consistent cervical and lumbar mris, bilateral knee pain, arthalgias, myalgias, and chronic pain." *Id.* at 22.

Additionally, Dr. Gendron conducted a medical file review and asserted that, although plaintiff's profile is consistent with a fibromyalgia diagnosis, "[p]atients with fibromyalgia syndrome are typically encouraged to continue aerobic and work activities." *Id.* at 40. After assessing the other doctors' records, he concludes that "[b]ased on a diagnosis of Fibromyalgia, the claimant should be capable of sustaining work activities as a dealer." *Id.*

On May 11, 2012, plaintiff filed a motion for judgment on the pleadings and administrative record, pursuant to Federal Rule of Civil Procedure 52. (ECF No. 25). That same day, defendant filed a motion for summary judgment or, alternatively, a motion for judgment on the pleadings and administrative record. (ECF Nos. 26, 27). On July 30, 2012, this court granted defendant's motion for summary judgment. (ECF No. 33). On August 15, 2012, plaintiff filed a notice of appeal. (ECF No. 35). On January 28, 2015, the Ninth Circuit reversed and remanded this court's decision, holding that there was a triable issue of fact as to whether plaintiff was disabled under the terms of the disability policy and instructing this court to review the administrative record. (ECF No. 42).

## II.   Legal Standard

Federal Rule of Civil Procedure 52 states:

> In an action tried on the facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately. The findings and conclusions may be stated on the record after the close of the evidence or may appear in an opinion or a memorandum of decision filed by the court.

When adjudicating a case involving the distribution of benefits under an ERISA plan, "the district court may try the case on the record that the administrator had before it." *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1095 (9th Cir. 1999). The plaintiff must show by a preponderance of the

**James C. Mahan**
**U.S. District Judge**

- 5 -

evidence that she is entitled to benefits, in accordance with the terms of the applicable plan. *See, e.g.*, *Oster v. Standard Ins. Co.*, 759 F. Supp. 2d 1172, 1185 (N.D. Cal. 2011).

### III.  Discussion

As an initial matter, this court notes that plaintiff appealed to the Ninth Circuit to review the previous judgment in this case. (ECF Nos. 34, 35). This court previously granted summary judgment in favor of defendant and denied plaintiff's contrasting motion. (ECF Nos. 33, 35). The Ninth Circuit's holding that "[s]ummary judgment in Anthem's favor was . . . improper" because Dr. Tsai and Dr. Jianu's opinions created a "triable dispute of fact as to whether Decovich was disabled under the terms of the disability policy" definitively precludes the success of a motion for summary judgment. (ECF No. 42 at 2–3); *see* Fed. R. Civ. P. 56(a).

The Ninth's Circuit's memorandum now obligates this court to evaluate plaintiff's denial of benefits: (1) de novo; (2) without consideration to any alleged mental condition; and (3) "on the record that was before the administrator." (ECF No. 42 at 2–4). Indeed, this court concurs with defendant's characterization of the question on remand: "whether plaintiff has established that she is disabled from a physical condition, based on the record that was before Anthem at the time it issued its decision on appeal." (ECF No. 50 at 7); *see also* (ECF No. 42). Accordingly, plaintiff's arguments implying that the Ninth Circuit memorandum instructed this court to decide whether plaintiff was disabled due to a psychological or similar issue are unpersuasive. *See* (ECF No. 51); *see also* Anthem-000012, 399 (claiming to be disabled based on her fibromyalgia).

Both parties' motions depend on the question of whether the plaintiff was "disabled," as that term is defined in the group policy provided by Anthem. (*See* ECF Nos. 25 at 3, 27 at 31–32). The policy's definition of the terms "disability" or "disabled" depends on Anthem's:

> [D]etermination that a significant change in your physical or mental condition due to: [] accidental injury; or [] Sickness; or [] Mental Illness; or Substance Abuse; or pregnancy[] began on or after your coverage Effective Date and prevents you from performing, during the Benefit Qualifying Period and the following twelve (12) months, the Essential Functions of your Regular Occupation or of a Reasonable Employment Option offered to you by the Employer, and as a result you are unable to earn more than fifty percent (50%) of your Pre-disability Monthly Income.
>
> After that, you must be so prevented from performing the Essential Functions of any Gainful Occupation that your training, education, and experience would allow you to perform.

Anthem-000638.

James C. Mahan
U.S. District Judge

- 6 -

> Moreover, "sickness" is defined as:
>
> [A]n illness or condition resulting from or caused by: [] any condition, disease or disorder of the mind or body; or [] any infection, except a pus-forming infection of an accidental cut or wound; or [] Mental Illness or Substance Abuse; or hernia of any type unless it is the immediate result of an accidental injury covered by This Plan; or [] heart disease; or [] pregnancy or complications of pregnancy; or [] any medical treatment for the above.

*Id.* at 664.

Plaintiff makes much of the fact that reviewing doctors, such as Dr. Howard, accepted the diagnosis of fibromyalgia. *See* (ECF No. 51). However, defendant's argument that the diagnosis is not the automatic equivalent to a finding of disability is persuasive. *See Jordan v. Northrop Grumman Corp. Welfare Benefit Plan*, 370 F.3d 869, 880 (9th Cir. 2004), *abrogated on other grounds by Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 969 (9th Cir. 2006).

Furthermore, "courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003). Although plaintiff may suffer from fibromyalgia, there is insufficient evidence on the record to conclude that plaintiff is "disabled," as that term is defined in the underlying policy.

As noted in the Ninth Circuit decision, Dr. Jianu and Dr. Tsai offered evidence favorable to a finding of disability. (ECF No. 42). Although the majority there mentioned that the meaning of the "deferral" language regarding Dr. Tsai's assessment was disputed, this court finds that a reasonable inference from Dr. Tsai's response to this language is that his confidence in his medical assessment in this case was relatively weak. (*Id.* at 3 n.1). Moreover, it appears that when Dr. Tsai diagnosed plaintiff with fibromyalgia, he did not indicate whether she would be able to return to work or if her condition would be permanent. Anthem-000406 (Dr. Tsai's physician's statement, entries 22–24).

Additionally, Dr. Jianu found that plaintiff's ability to work in her position was more likely "impair[ed]" because of her "severe depression with musculoskeletal manifestations" instead of her fibromyalgia. *Id.* at 49. Moreover, the meaning of "impaired," as the word is used in Dr. Jianu's letter to Dr. Gendron, is unclear. *Id.* There, that term does not necessarily demonstrate an inability to perform "the Essential Functions of [plaintiff's] Regular Occupation," as required by

James C. Mahan
U.S. District Judge

- 7 -

the policy's definition of "disability"; that term could instead plausibly indicate plaintiff's mere restrained capacity to complete her work-related tasks. *Compare id.*, *with* Anthem-000638.

Therefore, this court finds that, although plaintiff may have had physical difficulty performing her employment as a dealer and suffered from stomach pain and fibromyalgia, the weight of the medical evaluation and discussion on the record—reviewed above—supports the conclusion that plaintiff has not surmounted her burden to show that she was disabled, as that term is defined in the plan.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendant's motion for judgment (ECF No. 26) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that plaintiff's motion for judgment (ECF No. 25) be, and the same hereby is, DENIED.

The clerk shall enter judgment accordingly and close the case.

DATED January 26, 2017.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**

- 8 -